**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

---

**No. 21-4411**

---

UNITED STATES OF AMERICA,

        Plaintiff - Appellee,

v.

EMILIO R. MORAN,

        Defendant - Appellant.

---

Appeal from the United States District Court for the Eastern District of North Carolina, at Raleigh.  James C. Dever III, District Judge.  (5:19-cr-00479-D-1)

---

Argued:  March 8, 2023                                    Decided:  June 21, 2023

---

Before GREGORY, Chief Judge, and NIEMEYER and RICHARDSON, Circuit Judges.

---

Dismissed by published opinion.  Judge Richardson wrote the opinion, in which Chief Judge Gregory and Judge Niemeyer joined.

---

**ARGUED:**  Deborrah Lynn Newton, NEWTON LAW, Raleigh, North Carolina, for Appellant.  David A. Bragdon, OFFICE OF THE UNITED STATES ATTORNEY, Raleigh, North Carolina, for Appellee. **ON BRIEF:**  Michael F. Easley, Jr., United States Attorney, Lucy Partain Brown, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Raleigh, North Carolina, for Appellee.

RICHARDSON, Circuit Judge:

While living in Japan, Emilio Moran sexually abused a young girl. When he got caught, he tried to escape the consequences by fleeing back to the United States. But the government brought charges under the Military Extraterritorial Jurisdiction Act. The Act allows for the federal prosecution of crimes committed outside the United States when the defendant is accompanying, employed by, or a member of the United States Armed Forces. The government's theory was that Moran was employed by the Armed Forces because he worked for a Department of Veterans Affairs subcontractor. Or, the government argued, he was accompanying a member of the Armed Forces because he lived with his wife who worked on the Kadena Air Base in Japan. On appeal, Moran seeks to challenge those theories.

Yet he chose to not press that challenge below. Instead, Moran took a deal. He pleaded guilty to two charges in exchange for the government's dropping the rest. As part of the deal, he also agreed to waive any right to appeal. The district court accepted the plea agreement and sentenced Moran to 420 months' imprisonment. But, despite his waiver, Moran still appeals. He wants to argue that he fell outside the scope of the Military Extraterritorial Jurisdiction Act while living in Japan. His problem is that he must get around his appeal waiver. He tries to do this by arguing that, since jurisdiction cannot be waived, he has every right to proceed. But Moran confuses a crime's jurisdictional element with federal courts' subject-matter jurisdiction. Moran is not challenging the district court's subject-matter jurisdiction. He's challenging the sufficiency of the evidence on his

2

crimes' jurisdictional element. And since a sufficiency-of-the-evidence challenge falls under his appeal waiver, we dismiss his appeal.

## I.      Background

Moran's journey to Japan started with his service in the United States Marine Corps. His career in the Marines took him around the world before first landing in Japan in 2003. Two years later, his wife and child joined him there. But around 2008, they moved back to the United States as their marriage dissolved. Moran carried on his military career, during which he met his second wife. With her, he headed back to Japan in December 2012. Her family lived in Okinawa, Japan, so he accepted a position there with the Marines. Four years later, Moran was court-martialed and discharged from the Marines for conduct unrelated to this case. Yet Moran stayed in Japan after his discharge. He was briefly unemployed, but then became a janitor for a local church in Okinawa around November 2016. He worked at the church until March 2018 when he "obtained a position as a career counselor for Serco, Inc. and he was placed at the Veteran's Affairs Transition Assistance Program at Kadena Air Base in Okinawa, Japan." J.A. 137.

While working as a janitor at the church, Moran met and began sexually abusing a fourteen-year-old girl. After meeting her, he befriended her family, groomed her, and enticed her into sexual activity. They had an illicit eight-month relationship—beginning around the end of Moran's time at the church and continuing during his employment with Serco—which included a five-month period when they had sex multiple times a week. He often filmed and photographed their interactions. And he cajoled her into sending him sexually explicit photographs.

3

Moran also went to great lengths to cover up his crimes. He took the girl to a pharmacy to get birth control under false identification. He told her to delete evidence on her phone, and he threw his own phone in the ocean after smashing it. He told the girl to wash her vagina with vinegar in hopes that it would clear any DNA remnants. And he even offered her money to run away from her family.

Despite those efforts, Moran got caught. The girl's parents discovered his behavior and reported him. When the Air Force began investigating, Moran fled black to the United States. But the Military Extraterritorial Jurisdiction Act meant that he couldn't escape the consequences of his actions. *See* 18 U.S.C. § 3261.

The Act permits prosecuting:

Whoever engages in conduct outside the United States that would constitute an offense punishable by imprisonment for more than 1 year if the conduct had been engaged in within the special maritime and territorial jurisdiction of the United States—

> (1)   while employed by or accompanying the Armed Forces outside the United States; or

> (2)   while a member of the Armed Forces subject to chapter 47 of title 10 (the Uniform Code of Military Justice),

§ 3261(a). The Act, in turn, gives the phrase "employed by or accompanying the Armed Forces" a capacious definition. It says that "employed by the Armed Forces outside the United States" includes any civilian employee, (sub)contractor, or employee of a (sub)contractor of the Department of Defense or other federal agency "to the extent such employment relates to supporting the mission of the Department of Defense overseas" who is "present or residing outside the United States in connection with such employment" and

4

is "not a national of or ordinarily resident in the host nation." 18 U.S.C. § 3267(1). And it defines "accompanying the Armed Forces outside the United States" to include a "dependent" who is "residing" with a member of the military or employee of the military—as defined in § 3267(1)—who is "not a national of or ordinarily resident in the host nation." § 3267(2).

Under the government's theory, the Act authorized prosecuting Moran because his employment with Serco qualified him as an employee under § 3267(1) and his residency with his wife (who worked on Kadena Air Base) qualified him as a dependent under § 3267(2). So the government took the case to a grand jury. He was indicted on eight counts.[1]

After being indicted, Moran entered a plea agreement. He agreed to plead guilty to both sexually abusing and enticing a minor. In exchange, the government dropped his remaining charges. The plea agreement also included an appeal-waiver provision that Moran would "waive knowingly and expressly the right to appeal the conviction and whatever sentence is imposed on any ground . . . excepting an appeal or motion based upon grounds of ineffective assistance of counsel or prosecutorial misconduct . . . ." J.A. 120.

The district court accepted Moran's plea at a Rule 11 hearing. At the hearing, the district court found that Moran was competent to plead and understood the rights he was giving up. The district court even singled out "one term in particular" to review with

---

[1] Moran was indicted for producing child pornography, 18 U.S.C. § 2251(a); sexually abusing a minor, 18 U.S.C. § 2243(a); enticing a minor, 18 U.S.C. § 2422(b); transferring obscene material to a minor, 18 U.S.C. § 1470; witness tampering, 18 U.S.C. § 1512(b); and destroying, altering, or falsifying records, 18 U.S.C. § 1519.

5

Moran:  the appeal-waiver term.  J.A. 43.  Moran was clear.  He understood he was giving up his right to appeal.

The district court also reviewed the indictment with Moran, including the specific facts supporting prosecution under § 3261.  Reading from the indictment, the district court told Moran that, as accused:

> At all times material to this indictment from on or about February 5th, 2018, through on or about October 17th, 2018, the Defendant Emilio R. Moran a citizen of the United States was employed by the armed forces outside the United States as defined in 18 U.S.C. Section 3267(1) and was accompanying of the armed forces outside the United States as defined in 18 U.S.C. Section 3267(2), that is the defendant was a civilian employed -- employee of the VA Transition Assistance Program located on Kadena Air Base, Okinawa, Japan, a federal agency that supports the mission of the Department of Defense overseas.
>
> The Defendant was present and residing outside the United States in Japan in connection with such employment.  The Defendant was a dependent of a civilian employee of the Department of Defense located on Kadena Air Base, Okinawa, Japan.  The Defendant was residing with such civilian employee outside the United States.  The Defendant is not a national of or ordinarily a resident in Japan.  And the conduct described in Counts 1 through 8 of this indictment occurred at or near Kadena Air Base located on the island of Okinawa, Japan.  The conduct described herein constitutes an offense which would be punishable by imprisonment for more than one year if the conduct had been engaged in within the special maritime and territorial jurisdiction of the United States.

J.A. 34–35.  Later, when taking Moran's pleas on the two counts, the district court did not re-read the indictment's allegations supporting prosecution under § 3261 but "incorporate[d] that by reference."  J.A. 46.  Moran admitted that he had committed both crimes.  The government then proffered the evidence that they would have shown had the case proceeded to trial.  Finding the factual basis sufficient, the district court accepted the pleas.

6

The court ultimately sentenced Moran to 420 months' imprisonment. He appealed. Citing the appeal waiver, the government moved to dismiss.

## II.    Discussion

When the government invokes an appeal waiver, we enforce it "'if it is valid and if the issue being appealed falls within' the scope of the waiver." *United States v. Boutcher*, 998 F.3d 603, 608 (4th Cir. 2021) (quoting *United States v. Beck*, 957 F.3d 440, 445 (4th Cir. 2020)). Finding both conditions satisfied here, we enforce the waiver and dismiss Moran's appeal.

First, the waiver is valid. In assessing its validity, we consider "whether the defendant knowingly and intelligently agreed to waive the right to appeal, an inquiry ultimately . . . evaluated by reference to the totality of the circumstances." *United States v. Cohen*, 459 F.3d 490, 494 (4th Cir. 2006) (cleaned up). There's no question that Moran entered into his waiver knowingly and intelligently. The waiver is "unambiguous" and "plainly embodied in the plea agreement." *United States v. General*, 278 F.3d 389, 400 (4th Cir. 2002). And the district court went to great lengths to ensure that Moran understood what he was giving up, singling out the appeal waiver for discussion at the Rule 11 colloquy. In fact, Moran does not dispute the waiver's validity.

Second, every issue raised on appeal falls within the waiver's scope. Moran waived his right to appeal, only "excepting an appeal or motion based upon grounds of ineffective

7

assistance of counsel or prosecutorial misconduct . . . ." J.A. 120. None of his claims on appeal fits into either category.[2]

Even so, subject-matter jurisdiction can never be waived. *Gonzalez v. Thaler*, 565 U.S. 134, 141 (2012). In other words, a defendant can't give away his ability to attack the district court's subject-matter jurisdiction on appeal.[3] *See United States v. Cotton*, 535 U.S. 625, 630 (2002). Moran seeks to rely on this principle by casting one of his arguments as a jurisdictional challenge. He says that he was not employed by or accompanying the Armed Forces, meaning that § 3261's elements were not satisfied. This, he argues, means that "[t]he district court and this Court therefore lack jurisdiction over this case." Appellant's Br. at 16; *see also* Appellant's Br. at 12 ("Section 3261(a) did not confer extraterritorial jurisdiction in this case, however, because Moran was not employed by or accompanying the Armed Forces.").

If Moran were right that his challenge is jurisdictional, then his appeal waiver would not stand in the way. We could then consider the merits of his argument that the evidence presented did not provide a sufficient factual basis for the district court to accept his

---

[2] Our analysis focuses on Moran's argument that he fell outside the scope of the Act while living in Japan, but he also raised several sentencing arguments. Those arguments are also within the scope of the waiver.

[3] There's also a "narrow class of claims that we have allowed a defendant to raise on direct appeal despite a general waiver of appellate rights." *United States v. Lemaster*, 403 F.3d 216, 220 n.2 (4th Cir. 2005). Examples include challenges to sentences based on a constitutionally impermissible factor, *see United States v. Martin*, 961 F.2d 493, 496 (4th Cir. 1992), and to sentences imposed beyond the authority of the district court, *see United States v. Broughton-Jones*, 71 F.3d 1143, 1147–49 (4th Cir. 1995); and cases in which enforcing the waiver would result in a miscarriage of justice, *see United States v. Adams*, 814 F.3d 178, 182 (4th Cir. 2016). But those claims aren't at issue here.

admission that he fell under § 3261. But Moran is wrong. He conflates "subject-matter jurisdiction" with a "jurisdictional element" of his offenses. A brief explanation can pull the two apart.

Start with subject-matter jurisdiction. It "defines the court's authority to hear a given type of case." *United States v. Morton*, 467 U.S. 822, 828 (1984). The lower federal courts get such authority from Congress. And Congress gave the district courts the authority to adjudicate "all offenses against the laws of the United States." § 3231. Accordingly, here, the district court had subject-matter jurisdiction to hear this "type of case." *Morton*, 467 U.S. at 828.

An offense's jurisdictional element goes to a different issue: "the power of Congress to regulate the conduct at issue, not the jurisdiction of the court to hear a particular case." *United States v. Carr*, 271 F.3d 172, 178 (4th Cir. 2001). Congress does not have freewheeling authority to legislate. *See United States v. Morrison*, 529 U.S. 598, 607 (2000) ("Every law enacted by Congress must be based on one or more of its powers enumerated in the Constitution."). This is no less true when Congress legislates on crime. The Constitution directly grants Congress the authority to regulate certain, limited conduct. *See* U.S. Const. art. I, § 8, cl. 6 ("Congress shall have Power . . . To provide for the Punishment of counterfeiting the Securities and current Coin of the United States"); *id.* art. I, § 8, cl. 10 ("Congress shall have Power . . . To define and punish Piracies and Felonies committed on the high Seas, and Offences against the Law of Nations"). But otherwise, Congress includes an element that "connects the law to one of Congress's enumerated powers, thus establishing legislative authority." *Torres v. Lynch*, 578 U.S. 452, 467 (2016).

9

Often, that's the Commerce Clause. *See* U.S. Const. art. I, § 8, cl. 3. Here, it's the Military Clauses. *See id.* cls. 12–14; *see also United States v. Brehm*, 691 F.3d 547, 551 (4th Cir. 2012) (resting Congress's authority to pass the Act in its power to "raise and support Armies" (quoting U.S. Const. art. I, § 8, cl. 12)). Though "[l]awyers and judges sometimes refer" to such an element "as the 'jurisdictional element,'" that's really "a colloquialism." *Hugi v. United States*, 164 F.3d 378, 380 (7th Cir. 1999) (quoting *Kanar v. United States,* 118 F.3d 527, 529-30 (7th Cir. 1997)).

Moran's challenge implicates only the latter concept. Whether the evidence proffered would actually establish that Moran was employed by or accompanying the Armed Forces has nothing to do with the district court's authority to hear the case. His argument, at its core, is that § 3261 was not satisfied. But, as we've discussed, the district court had subject-matter jurisdiction under § 3231, a separate, jurisdiction-granting statute. In fact, we've been clear that, for the prosecution of federal crimes, § 3231 is "the beginning and the end of the jurisdictional inquiry." *United States v. Hartwell*, 448 F.3d 707, 716 (4th Cir. 2006) (cleaned up). So § 3261—the provision that Moran contests—is not jurisdiction-granting. His challenge thus does not implicate subject-matter-jurisdiction; instead, it goes to the merits of his offense. *Cf. Lamar v. United States*, 240 U.S. 60, 65 (1916) ("[N]othing can be clearer than that the district court, which has jurisdiction of all crimes cognizable under the authority of the United States, acts equally within its jurisdiction whether it decides a man to be guilty or innocent under the criminal law, and whether its decision is right or wrong. The objection that the indictment does not

10

charge a crime against the United States goes only to the merits of the case." (citation omitted)).[4]

Several Fourth Circuit cases make the point. *See Carr*, 271 F.3d at 178; *United States v. White*, 771 F.3d 225, 229 n.2 (4th Cir. 2014); *United States v. Pickering*, 771 F. App'x 287, 288 (4th Cir. 2019).[5]

*Carr* first recognized the distinction. There, a defendant challenged his conviction and sentence on his guilty pleas to, among other offenses, maliciously damaging and destroying a building used in interstate commerce by fire, in violation of 18 U.S.C. § 844(i). *Carr*, 271 F.3d at 175. He argued that "because the interstate commerce element is 'jurisdictional,' the federal courts lack subject matter jurisdiction over his case if the interstate commerce element was not proven." *Id.* at 178. We rejected the argument: A criminal offense's jurisdictional element "is merely one element of the criminal activity,"

---

[4] The Supreme Court has repeatedly made the analogous point in the civil context: "It is firmly established in our cases that the absence of a valid (as opposed to arguable) cause of action does not implicate subject-matter jurisdiction, *i.e.*, the courts' statutory or constitutional *power* to adjudicate the case." *Steel Co. v. Citizens for Better Env't*, 523 U.S. 83, 89 (1998).

[5] Other circuits agree. *See, e.g.*, *United States v. Grimon*, 923 F.3d 1302, 1306 (11th Cir. 2019) ("[J]urisdictional elements . . . are not 'jurisdictional' in the sense of bearing on whether or not the *district court* has subject matter jurisdiction or authority to adjudicate the case."); *In re Sealed Case*, 936 F.3d 582, 594–96 (D.C. Cir. 2019); *Hugi*, 164 F.3d at 380–81 ("A link to interstate commerce may be essential to Congress's substantive authority but the existence of regulatory power differs from the subject-matter jurisdiction of the courts." (citation omitted)); *United States v. Riddle*, 249 F.3d 529, 536 (6th Cir. 2001) ("This court has explained that the interstate commerce requirement, while referred to as a 'jurisdictional' element, does not affect subject matter jurisdiction, that is, the court's power to hear a case. Rather, a claim of an insufficient connection to interstate commerce is a challenge to one of the elements of the government's case and is therefore considered a claim about the sufficiency of the evidence.").

11

and "implicates the power of Congress to regulate the conduct at issue, not the jurisdiction of the court to hear a particular case." *Id.* So a challenge to the offense's jurisdictional element is not "jurisdictional" in the technical sense; instead, it "merely contests the sufficiency of the evidence supporting that element of the offense." *Id.*; *see White*, 771 F.3d at 229 n.2.

*Pickering* reiterates this idea. There, we once more recognized the distinction between challenging subject-matter jurisdiction and an offense's jurisdictional element. Pickering stabbed his daughter to death on the Blue Ridge Parkway. He pleaded guilty to murder within the territorial jurisdiction of the United States—under 18 U.S.C. § 1111(b)—and agreed to an appeal waiver. That didn't stop him from noticing an appeal "arguing that (1) the district court lacked jurisdiction over his case because there was insufficient evidence that he committed his crime within the special maritime and territorial jurisdiction of the United States; (2) the appeal waiver does not bar his jurisdictional argument because the requirement of jurisdiction may not be waived." *Pickering*, 771 Fed. App'x at 288 (cleaned up). But we held that he was wrong; his appeal waiver *did* bar his argument. *Id.* ("Pickering's view that the appeal waiver is no bar because jurisdiction cannot be waived confuses subject-matter jurisdiction . . . with 18 U.S.C. § 1111(b)'s jurisdictional element."). In short, "[a]ny argument about where the murder occurred falls within the scope of the appeal waiver as a challenge to his conviction, and must be dismissed." *Id.*

The same is true here. Any argument about whether Moran was accompanying or employed by the military under § 3261 falls within the scope of the appeal waiver as a

12

challenge to his conviction, and must be dismissed. *See id.* Moran had the right—a constitutionally protected right—to force a jury to decide whether he was accompanying or employed by the military in Japan. Instead, he decided to take a deal. Under the deal, the government dropped some charges, while Moran admitted to other ones—including to the jurisdictional element of § 3261. Trying to force the government to now prove their case on appeal is the very right that a defendant gives up when entering a plea agreement with an appeal waiver.

*    *    *

Moran signed a plea agreement. Hoping to evade his end of the deal, he disguises his appeal as jurisdictional. We see it for what it really is: a sufficiency-of-the-evidence challenge which he renounced any right to bring. Accordingly, the appeal is

*DISMISSED.*