**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

_____

No. 22-4463

_____

UNITED STATES OF AMERICA,

Plaintiff – Appellee,

v.

CHARLES ANTHONY PITTMAN,

Defendant – Appellant.

_____

Appeal from the United States District Court for the Eastern District of North Carolina, at Raleigh. Richard E. Myers, II, Chief District Judge. (5:20-cr-00305-M-1)

_____

Argued:  September 24, 2024                           Decided:  January 13, 2025

_____

Before NIEMEYER, GREGORY, and HEYTENS, Circuit Judges.

_____

Affirmed by published opinion. Judge Heytens wrote the opinion, which Judge Niemeyer and Judge Gregory joined.

_____

**ARGUED:** Heather L. Rattelade, RATTELADE LAW, Pittsboro, North Carolina, for Appellant. David A. Bragdon, OFFICE OF THE UNITED STATES ATTORNEY, Raleigh, North Carolina, for Appellee. **ON BRIEF:** Michael F. Easley, Jr., United States Attorney, John L. Gibbons, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Raleigh, North Carolina, for Appellee.

TOBY HEYTENS, Circuit Judge:

Charles Pittman pleaded guilty to violating a federal law that criminalizes burning or attempting to burn buildings owned by institutions that receive federal funding. On appeal, Pittman argues his conduct did not violate the statute, and, even if it did, the statute is unconstitutional as applied to him.

We conclude both arguments fail. Pittman's assertion that he did not violate the statute fails because he waived any such claim by pleading guilty. Pittman's as-applied constitutional challenge is either waived or forfeited, and we conclude he is ineligible for relief even under the more defendant-friendly forfeiture standard. We thus affirm.

I.

In 2020, Pittman pleaded guilty to a two-count criminal information. This appeal involves Count 1, which charged Pittman with violating 18 U.S.C. § 844(f)(1) and (2) by "aiding and abetting others" who "maliciously damaged and destroyed by means of fire and an explosive, a building, the Market House, . . . in whole and in part owned and possessed by the City of Fayetteville, an institution receiving Federal financial assistance." Suppl. A. 32. During the plea hearing, Pittman confirmed he "underst[ood] the charges" against him, admitted he "committed acts that constitute the elements of the crime," and agreed he was "in fact, guilty as charged in count 1." JA 41, 53–54, 60. The district court accepted Pittman's plea and set sentencing for a later date.

More than a year later—but still before sentencing—Pittman moved to dismiss Count 1. As support for that motion, Pittman argued Section 844(f)(1) "requires a nexus between" the federal financial assistance and the damaged property elements, JA 96,

2

because otherwise the statute would exceed Congress's constitutional authority and violate other statutory construction principles. Pittman further argued that the criminal information to which he pleaded guilty was itself invalid because it failed "to allege any nexus between the damaged property and the federal funding provided to the City of Fayetteville." JA 112. At a motions hearing and again in a post-hearing brief, Pittman repeated his "nexus" arguments and added a new one: that the City of Fayetteville is not an "institution or organization" under Section 844(f)(1). Pittman did not, however, move to withdraw his guilty plea. The district court denied the motion to dismiss Count 1 and sentenced Pittman to 60 months of imprisonment on that count.

## II.

Pittman asks us to "vacate his conviction under Section 844(f)(1) and remand the case with directions to dismiss" Count 1. Pittman Br. 13. He makes two broad arguments. First, Pittman contends that—partly, but not solely, to avoid constitutional problems—we should interpret Section 844(f)(1) as not reaching his conduct. Second, Pittman insists that, even if he violated Section 844(f)(1), the statute is unconstitutional as applied to him. We are not persuaded by either argument.

## A.

Pittman's assertion that Section 844(f)(1) does not reach his conduct fails because he waived any such challenge by pleading guilty. True, the Supreme Court has held that "a guilty plea by itself does not bar" a defendant from arguing "the statute of conviction violates the Constitution," thus "call[ing] into question the Government's power to constitutionally prosecute him." *Class v. United States*, 583 U.S. 174, 176, 181–82 (2018)

3

(quotation marks removed). But *Class* repeatedly described its holding as limited to "constitutional" claims. See, *e.g.*, *id.* at 178, 181, 185. Just as importantly, *Class* emphasized that "a valid guilty plea" *does* "relinquish[] any claim that would contradict the admissions necessarily made upon entry of a voluntary plea of guilty." *Id.* at 183 (quotation marks removed).

Pittman's statutory construction arguments create such a forbidden contradiction. By pleading guilty, Pittman necessarily admitted that his conduct violated the statute—indeed, that is the most basic function of a guilty plea. And Pittman identifies no authority saying a criminal defendant may admit to violating a statute by pleading guilty and then obtain appellate relief by insisting there really was no such violation after all. Contra *Grzegorczyk v. United States*, 997 F.3d 743, 748 (7th Cir. 2021) (holding that, despite *Class*, "an unconditional plea of guilty *is* sufficient to waive a defendant's right to contest the proper interpretation of the statute of conviction"). We thus decline to consider Pittman's statutory construction arguments.

## B.

Pittman's second argument—that Section 844(f)(1) is unconstitutional as applied to his conduct—fares no better. It could be argued that Pittman's unconditional guilty plea also waived any as-applied constitutional challenges, see, *e.g.*, *United States v. Deng*, 104 F.4th 1052, 1054 (8th Cir. 2024) (so holding), but we need not resolve that issue. Instead, we conclude that: (1) Pittman's constitutional challenge is forfeited because he did not timely raise it before the district court; and (2) he is ineligible for relief under the

4

resulting plain-error standard.

1.

"No procedural principle is more familiar . . . than that a constitutional right may be forfeited in criminal as well as civil cases by the failure to make timely assertion of the right before a tribunal having jurisdiction to determine it." *Yakus v. United States*, 321 U.S. 414, 444 (1944). The Federal Rules of Criminal Procedure, in turn, establish procedures for raising an alleged "defect in the indictment or information" including "failure to state an offense." Fed. R. Crim. P. 12(b)(3)(B)(v). Such claims "must be raised by pretrial motion" either filed by "a deadline" set by the district court or, in any event, no later than "the start of the trial." 12(b)(3) & (c)(1). Failure to "meet the deadline" renders any later-filed motion "untimely" unless the movant "shows good cause" for the delay. 12(c)(3).

As Pittman conceded at oral argument, he missed the relevant deadline here. True, Pittman ultimately filed a motion to dismiss that (generously construed) argued Section 844(f)(1) was unconstitutional as applied to his conduct. But the deadline for pretrial motions was July 29, 2020—two months before Pittman pleaded guilty and seventeen months before he moved to dismiss the criminal information—and Pittman never asserted (nor did the district court find) any good cause to excuse the untimely filing. Pittman likewise raised no constitutional challenge at the plea hearing itself. For that reason, his constitutional claims are, at minimum, forfeited.[1]

---

[1] Some of this Court's decisions suggest that a criminal defendant's failure to file a timely pretrial motion without good cause results in waiver, not just forfeiture. See, *e.g.*, *United States v. Ojedokun*, 16 F.4th 1091, 1113 (4th Cir. 2021). But see *United States v.* (Continued)

5

Pittman offers two responses. Neither persuades us.

First, Pittman asserts there is no forfeiture because the constitutional issues he raises implicate the district court's "subject-matter jurisdiction," JA 93, and a "defendant can raise the question of jurisdiction at any time," Oral Arg. 39:00–:04. The second part of that claim is true—*i.e.*, that challenges implicating "a court's power to hear a case . . . can never be forfeited or waived." *United States v. Cotton*, 535 U.S. 625, 630 (2002). But jurisdiction "is a word of many, too many, meanings." *Santos-Zacaria v. Garland*, 598 U.S. 411, 421 (2023) (quotation marks removed). And this Court has made clear that whether an indictment's allegations show a particular defendant's conduct falls within "the power of Congress to regulate" *does not* implicate "the jurisdiction of the court to hear a particular case." *United States v. Carr*, 271 F.3d 172, 178 (4th Cir. 2001); accord *United States v. Moran*, 70 F.4th 797, 802–04 (4th Cir. 2023) (citing cases). The district court had subject-matter jurisdiction under 18 U.S.C. § 3231, which gives federal district courts "original jurisdiction . . . of all offenses against the laws of the United States." That "is the beginning and the end of the jurisdictional inquiry" here. *Moran*, 70 F.4th at 803 (quotation marks removed).

Second, Pittman argues the Supreme Court's decision in *Class v. United States*, 583 U.S. 174 (2018), requires us to conclude his constitutional challenge has not been forfeited. Again, we disagree. *Class* involved waiver, not forfeiture, and "[w]aiver is

---

*Thomas*, 669 F.3d 421, 424 (4th Cir. 2012) (reviewing for plain error "two indictment challenges" that were never raised "in the district court"). We need not resolve any tension in our cases because we conclude Pittman's constitutional claims fail even under the more defendant-friendly plain-error standard.

6

different from forfeiture" in ways that matter here. *United States v. Olano*, 507 U.S. 725, 733 (1993).

Start with waiver. "[W]aiver is the intentional relinquishment or abandonment of a known right." *Olano*, 507 U.S. at 733 (quotation marks removed). A party who validly waives a right "may not later invoke that right as a basis for reversing her conviction—not because there is some barrier to doing so, but rather because the right has ceased to exist." Toby J. Heytens, *Managing Transitional Moments in Criminal Cases*, 115 Yale L.J. 922, 943 (2006). The issue in *Class* was whether a criminal defendant who pleads guilty "inherently waives the right to challenge the constitutionality of his statute of conviction" on appeal, and the Court answered that question "no." 583 U.S. at 178.

In contrast, *Class* involved no forfeiture issues. "[F]orfeiture is the failure to make the timely assertion of a right," *Olano*, 507 U.S. at 733, and the defendant in *Class* had made a timely assertion by "ask[ing] the Federal District Court . . . to dismiss the indictment" on the same constitutional grounds he later urged on appeal, *Class*, 583 U.S. at 176. *Class* thus had no occasion to consider whether traditional forfeiture principles continue to apply to defendants who fail to timely raise their constitutional claims before the district court. For that reason, we join several of our sister circuits in holding that *Class* does not disturb the operation of normal forfeiture rules. See *United States v. Ríos-Rivera*, 913 F.3d 38, 42 (1st Cir. 2019); *United States v. Bacon*, 884 F.3d 605, 610–11 (6th Cir. 2018); *Al Bahlul v. United States*, 967 F.3d 858, 876 (D.C. Cir. 2020).

### 2.

Because Pittman's constitutional claims are forfeited, our review is "circumscribed"

7

by Federal Rule of Criminal Procedure 52(b). *Olano*, 507 U.S. at 732. To be eligible for relief, Pittman "must satisfy three threshold requirements": (1) there was "error"; which (2) was "plain"; and (3) "affect[ed] substantial rights." *Greer v. United States*, 593 U.S. 503, 507 (2021) (quotation marks removed). We hold that Pittman's constitutional claims fail because he has not carried his "burden of establishing" the second requirement (*id.* at 508)—*i.e.*, that the unconstitutionality of applying Section 844(f)(1) to his conduct is "clear or obvious, rather than subject to reasonable dispute," *Puckett v. United States*, 556 U.S. 129, 135 (2009).

Pittman admits that the building in question—the Market House—is "a designated landmark on the National Register of Historic Places." Pittman Br. 6. That designation was made under the National Historic Preservation Act of 1966, a federal statute that "declares" it national policy to "preserve[]" "the historical and cultural foundations of the Nation" and "accelerate" the federal government's "historic preservation programs and activities." Pub. L. No. 89-665, 80 Stat. 915 (1966). To further those preservation efforts, Congress authorized the Secretary of the Interior "to expand and maintain a national register of districts, sites, buildings, structures, and objects significant in American history, architecture, archeology, and culture." § 101(a)(1), 80 Stat. at 915. Congress also authorized the Secretary "to grant funds to States for the purpose of preparing comprehensive statewide historic surveys and plans . . . for the preservation, acquisition, and development of such properties" and to "establish a program of matching grants-in-aid to States for projects having as their purpose the preservation for public benefit of

8

properties that are significant in American history, architecture, archeology, and culture." § 101(a)(1)–(2), 80 Stat. at 915.[2]

As he confirmed at oral argument, Pittman does not challenge the constitutionality of the National Historic Preservation Act or the inclusion of the Market House on the registry. We thus may "assume"—for purposes of our decision—that those actions were "a constitutional exercise of . . . congressional power." *Pittman v. Home Owners' Loan Corp. of Washington, D.C.*, 308 U.S. 21, 32 (1939). And if the federal government may designate national landmarks and spend federal money to preserve them, it is far from clear or obvious that Congress lacks power to criminalize burning or blowing up such landmarks under its authority "[t]o make all Laws which shall be necessary and proper for carrying into Execution" its other powers. U.S. Const. art. I, § 8, cl. 18; see *United States v. Comstock*, 560 U.S. 126, 136 (2010) (noting that the Constitution "grants Congress broad authority to create [federal] crimes" in furtherance of its other enumerated powers).[3] We thus reject Pittman's forfeited constitutional challenge at step two of the plain-error analysis.

---

[2] Indeed, it appears the City of Fayetteville sought and was awarded federal funds to help preserve the Market House in 2016 and 2020, though it is unclear whether any such funds were ultimately spent. See JA 238−39.

[3] As Pittman notes, a House committee report identifies the Property Clause (U.S. Const. art. IV, § 3, cl. 2) rather than the Necessary and Proper Clause as the source of congressional authority to enact Section 844(f)(1). See Pittman Br. 14–15 (citing H.R. Rep. No. 91-1549, 91st Cong., 2d. Sess. (1970)). That is of no moment because "[t]he question of the constitutionality of action taken by Congress does not depend on recitals of the power which it undertakes to exercise." *National Fed'n of Indep. Bus. v. Sebelius*, 567 U.S. 519, 570 (2012) (quotation marks removed).

\* \* \*

A criminal defendant who pleads guilty waives any argument that the statute of conviction does not cover that defendant's conduct. And a defendant who wishes to preserve an argument that a statute is unconstitutional as applied to a particular situation must make that argument by a timely pretrial motion or establish good cause for not having done so. The district court's judgment is

*AFFIRMED*.