**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Amir James ATTAR, Defendant– Appellant.**

**UNITED STATES of America, Plaintiff–Appellee,**

v.

**PERFECT VIEW, INC., Defendant– Appellant.**

**Nos. 93–5724, 93–5725.**

United States Court of Appeals, Fourth Circuit.

Argued March 10, 1994.

Decided Oct. 27, 1994.

---

**ARGUED:** Thomas Kieran Maher, Chapel Hill, NC, for appellants. Robert Daniel Potter, Jr., Asst. U.S. Atty., Raleigh, NC, for appellee. **ON BRIEF:** J. Douglas McCullough, U.S. Atty., Raleigh, NC, for appellee.

Before HAMILTON, Circuit Judge, and PHILLIPS and CHAPMAN, Senior Circuit Judges.

Affirmed by published opinion. Senior Judge PHILLIPS wrote the opinion, in which Judge HAMILTON and Senior Judge CHAPMAN joined.

## OPINION

PHILLIPS, Senior Circuit Judge:

Amir Attar and Perfect View, Inc. (PVI) appeal the sentences imposed upon them following their entry of guilty pleas to charges of mail fraud. The appeal raises difficult issues concerning the scope of a waiver of appeal rights in a plea agreement and the extent of a district court's obligation to grant a continuance after granting defense counsel's motion to withdraw. Finding that the

claims at issue here are not within the scope of the appeal-waiver provision, but that defendants' Sixth Amendment rights were not violated, we affirm the sentences imposed.

## I.

Attar is a chemical engineer who was the president and majority owner of PVI, a research-and-development company which held various research contracts with the United States Government between 1987 and 1991. In 1991, Attar and PVI were indicted in the Eastern District of North Carolina on multiple counts of defrauding the federal government in connection with those research contracts, including 22 counts of mail fraud, 23 counts of submitting false claims to the United States, and 150 counts of making false statements to the United States. Attar retained two attorneys, Cheshire and Gusler, to represent him and PVI in connection with these charges.

At their arraignment, Attar and PVI entered pleas of not guilty, PVI through Attar as its corporate representative. The following day, as the jury was about to be selected, Attar and PVI changed their pleas to guilty, pursuant to a plea agreement which their attorneys had negotiated with the government. The plea agreement provided that Attar and PVI would plead guilty to two counts of mail fraud, pay $120,000 in restitution, and forfeit certain property, in exchange for the government's agreement to dismiss the remaining 194 counts against them, to make no recommendation as to their sentence, and to stipulate that its loss was limited to $120,000. The plea agreement also contained a waiver-of-appeal-rights provision, in which Attar and PVI agreed to:

> waive knowingly and expressly all rights, conferred by 18 USC § 3742, to appeal whatever sentence is imposed, including any issues that relate to the establishment of the Guideline range, reserving only the right to appeal from an upward departure from the Guideline range that is established at sentencing, and further to waive all rights to contest the conviction or sentence in any post-conviction proceeding, including one pursuant to 28 USC § 2255, excepting the ... right to appeal based

> upon grounds of ineffective assistance of counsel and prosecutorial misconduct not known to the Defendants at the time of the[ir] ... guilty plea.

JA 44.

Pursuant to Rule 11 of the Federal Rules of Criminal Procedure, before accepting the guilty pleas, the district court engaged in a lengthy colloquy with Attar, as representative of both himself and the corporate defendant. At the conclusion of that Rule 11 exchange, the district court found that the pleas were being freely and voluntarily entered and that they were supported by an independent basis in fact. It therefore accepted the pleas, adjudged the defendants guilty, and set their sentencing for about four months later.

About two and a half weeks before the scheduled sentencing hearing, the Probation Office issued its preliminary draft of the presentence report for Attar. Defense counsel moved to continue the sentencing, claiming that they needed more time to prepare their objections to the presentence report. The district court granted the motion, which was not opposed by the government, and rescheduled the sentencing for a date approximately two months after the issuance of the preliminary draft of the presentence report. A week before this rescheduled sentencing hearing, the Probation Office issued the final presentence report, which increased Attar's guideline range by 13 months over that recommended in the initial draft.

Two days later, and only five days before the scheduled sentencing hearing, Cheshire and Gusler filed a motion to withdraw as defense counsel, together with a motion to continue sentencing a second time. (JA 78) The motion stated that Cheshire and Gusler had had "numerous and significant disagreements [with Attar] over the conduct of the case" since the entry of the guilty pleas five months earlier; that this disagreement concerned materials that Cheshire and Gusler wanted to file in response to the presentence report, but that the attorney-client privilege prevented them from explaining it further; and that their disagreement was now so "substantial and irreconcilable" that they be-

lieved their continued representation of the defendants would violate applicable ethical rules and deprive the defendants of their Sixth Amendment right to effective assistance of counsel. The motion also stated that Attar had informed Cheshire and Gusler that day that the defendants wanted to withdraw their guilty pleas, that they wished to retain other counsel to help them do so because they had "lost faith in" Cheshire and Gusler, and that they needed additional time to find substitute counsel. The motion asked the district court to continue sentencing long enough to permit the defendants to retain other counsel and to pursue their motion to withdraw their guilty pleas. The district court denied both the motion to withdraw and the accompanying motion for a continuance, without a hearing, and ordered the defendants to appear for sentencing as scheduled.

At the outset of the sentencing hearing, defense counsel renewed their motion to withdraw from the case, and the district court asked Attar whether he wanted them to continue to represent him. Attar responded that he was not guilty, that he had pled guilty only to protect members of his family, and that he wanted some time to retain new counsel to assist him in presenting a motion to withdraw his plea. (JA 86–87) The district court told Attar that it would not permit him to withdraw his plea, explaining that:

> You have pled guilty; we had an extensive Rule 11 colloquy and you elected to plead guilty; you have done so; the plea has been tendered and accepted by the Court. You are here for sentencing; the matter has been continued quite some time, and the Government is prepared to go forward with their burden. I am not going to allow you to withdraw your plea. You are going to be sentenced today.

JA 87. The court told Attar that he needed to choose between going forward with current counsel and going forward representing himself, either completely *pro se* or with current counsel as standby counsel. (JA 87) Attar did not give a direct response, saying only that he "was not really prepared right now to present argument as to why I've done what I've done and why I feel that justice is

not done ... by this plea or by this sentence." (JA 88) The district court repeated that it was not going to allow Attar to withdraw his plea, because it "was intelligently made and that is behind us," and asked him once again to decide whether to go forward with current counsel or representing himself, with or without current counsel as standby counsel. (JA 88) At this point, Attar asked to confer with Cheshire, which the court allowed him to do. Cheshire then addressed the court and attempted to explain the general nature of the conflict that he and Gusler believed had developed between them and the defendants. He stated that while he and Gusler were preparing a memorandum outlining their objections to the presentence report, Attar had informed them that the positions they were taking in that memorandum "were incorrect because he was not guilty," that he wanted to file a motion for a new trial because he was not guilty, and that he wanted ed to remove them as counsel for various reasons, which Cheshire said he could not explain "for fear of prejudicing somebody." (JA 89) After hearing Cheshire's remarks, and without any further discussion with Attar—e.g., a warning of the perils of proceeding *pro se,* or questioning designed to make sure that Attar did in fact desire to proceed *pro se,* rather than with current counsel, if he could not have a continuance to obtain substitute counsel—the district court stated tersely that the two attorneys "are allowed to withdraw as regular counsel" but ordered them to serve as standby counsel at sentencing. (JA 90) The court then proceeded directly to the sentencing hearing.

At the outset of that hearing, the district court permitted Cheshire and Gusler to file, under seal, the sentencing memorandum which they had prepared for Attar prior to their withdrawal. This caused some confusion, because Cheshire had just told the court that Attar did not agree with the positions taken in that memorandum. In an effort to clarify Attar's position, the court asked him whether he was objecting to everything in the presentence report. Attar's confusing reply seemed to indicate that he objected to the *factual* basis of the presentence report, but that he wanted to withdraw all objections to the presentence report

which Cheshire and Gusler had previously made on his behalf that were inconsistent with his current position that he was not guilty, and that he was "ready to be sentenced." (JA 91) Understandably unsure that Attar knew what he was doing, the district court decided to require the government to go forward with its evidence, as if Attar had objected to everything in the presentence report. (JA 92) The government then presented a summary of the evidence supporting the offense conduct and guideline applications contained in the presentence report. Attar declined to cross-examine any of the government's witnesses or to present any evidence for the defense, saying that he did not have the documents he needed to do so. (JA 193–203) Attar also failed to address any of the legal questions concerning the application of the various provisions of the guidelines which had previously been raised by Cheshire and Gusler.

At the conclusion of the sentencing hearing, the district court adopted the factual findings and proposed guideline applications contained in the presentence report and sentenced the defendants accordingly. The sentence that Attar received was at the top of the applicable guideline range after the district court applied several upward adjustments—all of which had been objected to by Attar's former counsel in their response to the presentence report.

Attar and PVI retained new counsel and took this appeal. On appeal, they contend principally that their sentences should be set aside because the proceedings following the entry of their guilty pleas—including both the sentencing hearing itself and the presentation of the motion to withdraw the guilty pleas that occurred at its outset—were conducted in violation of their Sixth Amendment right to counsel.

## II.

At the outset, the government argues that this appeal must be dismissed because the defendants waived all relevant appeal rights in the plea agreement.[1] We disagree.

■ In this circuit, a waiver-of-appeal-rights provision in a valid plea agreement is enforceable against the defendant so long as it is "the result of a knowing and intelligent decision to forgo the right to appeal." *United States v. Wessells*, 936 F.2d 165, 167 (4th Cir.1991); *see United States v. Marin*, 961 F.2d 493, 496 (4th Cir.1992); *United States v. Davis*, 954 F.2d 182, 186 (4th Cir.1992); *United States v. Wiggins*, 905 F.2d 51, 52–54 (4th Cir.1990); *United States v. Clark*, 865 F.2d 1433, 1437 (4th Cir.1989) (en banc). Whether such a waiver is "knowing and intelligent" depends "upon the particular facts and circumstances surrounding [its making], including the background, experience, and conduct of the accused." *Davis*, 954 F.2d at 186. After examining the circumstances surrounding the adoption of this particular waiver provision, we agree with the government that it was knowingly and intelligently made.

■ The defendants were represented by counsel at the time they entered into the plea agreement that contained the waiver. Before accepting their guilty pleas, the district court conducted an extensive Rule 11 colloquy with Attar, as representative of both himself and the corporate defendant. During that colloquy, the court established that Attar was a well-educated man with a Ph.D. in chemistry; that he was fully competent to plead for himself and the corporate defendant; that he understood the charges against himself and the corporate defendant and the range of penalties those charges carried; that he had discussed the applicability of the sentencing guidelines and their potential effect upon his sentence with his lawyers; that he had discussed the plea agreement extensively with his lawyers and was fully satisfied with their services in that regard; that he was aware that the exact length of his sentence was as yet undetermined, that the court was free to impose a sentence up to the statutory maximum, and that he would not

---

1. Though we have already considered and rejected the government's waiver argument in denying a pre-argument motion to dismiss, we believe the issue remains open for reconsideration here, since it is essentially jurisdictional in nature.

Upon reconsideration, however, we continue to adhere to our initial ruling that the waiver-of-appeal provision in the plea agreement does not bar this appeal.

be able to withdraw his guilty plea simply because the sentence imposed was more severe than he expected; and that he and PVI were in fact guilty of the misconduct charged in the two counts to which they were pleading guilty. (JA 52–56, 61–62) The district court then summarized the terms of the written plea agreement for Attar, including the provision waiving appeal rights, and verified that those terms accurately reflected the "sum and substance" of his agreement with the government. Though the district court did not explicitly ask Attar if he understood the significance of the waiver provision, it specifically drew that provision to his attention, and there is no indication in the record that he did not understand its import. Under these circumstances, we cannot say that Attar's decision to accept the waiver provision for himself and the corporate defendant was not a knowing and intelligent act. *See Davis*, 954 F.2d at 186 (finding waiver of appeal rights contained in plea agreement to be knowing and intelligent, even though trial judge did not explicitly question defendant about his understanding of the waiver provision, where the record established that the defendant was a college graduate, that he had no difficulty with the English language, and that he had discussed the plea agreement extensively with his counsel); *United States v. Bushert*, 997 F.2d 1343, 1351 (11th Cir.1993) (waiver of appeal rights may be knowing and intelligent, even if trial judge fails to specifically discuss the provision with the defendant during the Rule 11 colloquy, if "it is manifestly clear from the record that the defendant otherwise understood the full significance of the waiver"). *Compare Wessells*, 936 F.2d at 168 (finding waiver of appeal rights in plea agreement *not* knowing and intelligent, when transcript of Rule 11 hearing revealed that trial judge had not explicitly questioned defendant about his understanding of the waiver provision, and the record indicated that the defendant did not otherwise understand its significance). We therefore conclude that the waiver of appeal rights contained in the plea agreement is generally valid and enforceable.

That does not end our inquiry, however, for the real dispute here is not about the general validity of the waiver-of-appeal-rights provision, but about its scope: that is, whether it prevents us from considering the particular claims defendants are asserting on this appeal. As we have recognized previously, a defendant who executes a general waiver of the right to appeal his sentence in a plea agreement "does not [thereby] subject himself to being sentenced entirely at the whim of the district court," *Marin*, 961 F.2d at 496, but retains the right to obtain appellate review of his sentence on certain limited grounds. *Id.* In *Marin*, for example, we said that while a defendant who signs a general waiver of the right to appeal his sentence waives the right to appellate review of his sentence on the ground that it "rest[s] on an improper application of the guidelines or a violation of a procedural rule," he "could not be said to have waived his right to appellate review of a sentence imposed in excess of the maximum penalty provided by statute or based on a constitutionally impermissible factor such as race." *Id.* Nor do we think such a defendant can fairly be said to have waived his right to appeal his sentence on the ground that the proceedings following entry of the guilty plea were conducted in violation of his Sixth Amendment right to counsel, for a defendant's agreement to waive appellate review of his sentence is implicitly conditioned on the assumption that the proceedings following entry of the plea will be conducted in accordance with constitutional limitations. *See id; see also Bushert*, 997 F.2d at 1350 n. 18 (general waiver of the right to appeal sentence in plea agreement does not bar appellate review of a claim that the sentence was imposed in violation of certain "fundamental and immutable" constitutional guarantees) (*dicta*).

In this case, defendants do not seek to challenge their sentences on the ground that they rest on an improper application of the guidelines or a violation of some procedural rule, as did the defendant in *Marin*. Instead, they seek to challenge their sentences on the ground that the proceedings following entry of the guilty plea—including both the sentencing hearing itself and the presentation of the motion to withdraw their pleas—were conducted in violation of their Sixth Amendment right to counsel. We do

not think the general waiver of appeal rights contained in this plea agreement can fairly be construed as a waiver of the right to challenge their sentences on that ground. *See Marin,* 961 F.2d at 496; *Bushert,* 997 F.2d at 1350 n. 18.[2] Accordingly, we decline to dismiss this appeal, and proceed instead to its merits.

### III.

Defendants' primary claim on appeal is that the district court improperly denied them the effective assistance of counsel guaranteed by the Sixth Amendment when it permitted their lawyers to withdraw at the beginning of the sentencing hearing, denied their request for a continuance to retain substitute counsel, and forced them to represent themselves during the rest of the proceedings in the district court, including both the sentencing hearing itself and the presentation of the motion to withdraw their pleas that occurred at its outset.[3] The government responds that the district court properly granted defendants' request to proceed *pro se,* and that Attar's waiver of the right to counsel was, as is required by *Johnson v. Zerbst,* 304 U.S. 458, 464, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461 (1938), voluntary, knowing, and intelligent.

■ Underlying this appeal, therefore, lies a question of fact: When the district court "allowed counsel to withdraw" was it acknowledging defendants' wish to waive their Sixth Amendment right to counsel or, alternatively, was it granting defense counsels' motion to withdraw on the grounds of an ethical conflict? As noted, the government espouses the former view, defendants emphasize the latter. A careful review of the record convinces us that, although the question is not free from doubt, the defendants' characterization of the district court's action is the more accurate. Ironically, however, such a view of the proceedings does not finally aid the defendants in light of a district court's broad constitutional discretion whether to grant or deny continuances.

### A.

When, at the beginning of the sentencing hearing, defense counsel renewed their motion to withdraw from continued representation of Attar and PVI, the district court, reasonably enough, sought first to ascertain

---

**2.** Defendants also argue, citing *United States v. Craig,* 985 F.2d 175 (4th Cir.1993), that a waiver of appeal rights in a plea agreement will never preclude appellate review of the denial of a motion to withdraw the underlying guilty plea. We do not think *Craig* sweeps so broadly. Instead, we think *Craig* stands only for the proposition that a waiver of appeal rights in a plea agreement will not bar appellate review of the denial of a motion to withdraw the underlying guilty plea when the plea-withdrawal motion incorporates a *colorable* claim that the plea agreement itself—and hence the waiver of appeal rights that it contains—is tainted by constitutional error, be it lack of constitutionally effective assistance of counsel (as in *Craig* itself), unconstitutional denial of any counsel whatsoever, or something else. *See id.* at 178 (waiver of appeal rights in plea agreement will not bar appeal from denial of plea-withdrawal motion where "the waiver of appeal itself [is] being challenged by the motion to withdraw the guilty plea").

In this case, the plea-withdrawal motion whose denial defendants seek to challenge does incorporate a claim that the plea agreement and the waiver provision within it are tainted by constitutional error. Specifically, the defendants claim that the plea agreement was not voluntary, because the defendants entered into it only to spare Attar's family the embarrassment of trial. We do not think that claim of constitutional error is sufficiently "colorable" to implicate *Craig.* A defendant's desire to spare his family the embarrassment of trial is not sufficient to render his decision to plead guilty "involuntary" in the constitutional sense; if it were, virtually every guilty plea would be invalid, for a defendant can almost always claim that he entered into it in part to spare himself or his family the embarrassment of trial. We therefore conclude that the *Craig* principle has no application here.

**3.** Defendants also claim that the district court violated their Fifth Amendment due process rights by refusing to grant them a continuance either to retain substitute counsel or to prepare to represent themselves, after permitting their first counsel to withdraw. We need not address this claim independently, for the constitutional inquiry required to resolve it is identical, in this context, to that required to resolve the defendants' Sixth Amendment claim. *See Sampley v. Attorney General of North Carolina,* 786 F.2d 610, 613 n. 1 (4th Cir.1986); *Morris v. Slappy,* 461 U.S. 1, 11–12, 103 S.Ct. 1610, 1616–17, 75 L.Ed.2d 610 (1983) (citing standard used to analyze due process challenges to refusals to continue in analyzing Sixth Amendment challenge to refusal to grant continuance).

Attar's own wishes. The only preference that Attar clearly expressed, however, was to withdraw his guilty plea. The court expressly denied Attar's (oral) motion and then twice presented Attar with his three options—to proceed *pro se*, to continue with representation by Cheshire and Gusler, or to represent himself with Cheshire and Gusler as standby counsel. After Attar conferred briefly with his attorneys, Cheshire addressed the court as follows:

> For the purpose of explaining to Your Honor and also for the ... record, Mr. Gusler and I find ourselves in a very difficult position....
>
> I have here in a sealed envelope a defense memorandum, legal and factual, as it relates to the presentence report that has been filed by the probation office.
>
> Our client has told us during the completion of this document ... that the positions that we were taking as it relates to the presentence report, and the basic initial objections that we had been making to the presentence report all along, were incorrect because he was not guilty.
>
> Now he has told us that he wanted to remove us as counsel for various reasons, and I don't want to get into all of that for fear of prejudicing somebody.
>
> And he has told us that he wants to file a motion for a new trial because he is not guilty. He has now told the Court here this morning, also that he is not guilty.
>
> If we were to proceed to represent him at this time under his instructions to us, we would be in a position I believe where we would have to withdraw his objections made through us to the presentence report, and not submit this document because, for the sake of argument, this document may contain legal and factual arguments against the upward enhancements that would be against his present position.

JA 89–90.

What Cheshire conveyed, perhaps as clearly as he could, was the nature of the ethical dilemma at which he had hinted in his earlier

motion to withdraw. Attar, it was apparent, would not budge from his insistence that he and PVI were innocent. But Cheshire and Gusler had prepared their objections to the presentence report in accord with the defendants' earlier guilty pleas. That is, they continued to concede factual guilt while advancing other objections to the upward adjustments urged by the government. Were they to conduct Attar's representation at the sentencing hearing in accord with his newly voiced protestations of innocence, they could not, of course, submit their prepared objections.[4] Indeed, it had now become apparent that the only way in which they could represent the defendants at sentencing in accordance with Attar's newly adopted position would be by asserting their innocence—a course neither legally nor ethically open to them in view of the guilty pleas.

It was in appreciation of these considerations, we believe, that the district court suddenly reversed itself and permitted Cheshire and Gusler to withdraw. The district court was evidently convinced that Cheshire and Gusler could not represent Attar, ethically and effectively, at sentencing once Attar denied them permission to acknowledge his guilt. The government is mistaken, then, to contend that the district court properly found that Attar exercised a constitutionally valid waiver of his right to counsel. To the contrary, once the district court understood the nature of the ethical problem with which Attar was confronting his attorneys, it no longer deemed Attar's own preferences controlling. The question then, is not whether Attar waived his right to counsel and, if so, whether his waiver was voluntary, knowing, and intelligent, but whether the district court erred in simultaneously granting counsels' motion to withdraw and denying Attar's motion for a continuance.

### B.

There is no doubt that the district court acted well within its authority in granting Cheshire and Gusler's motion to withdraw. The gravity of counsels' reasons for seeking

---

4. Indeed, although the district court did not know it at the time, Cheshire and Gusler had included in their written objections an argument

for a downward adjustment for Attar's acceptance of responsibility.

to withdraw easily distinguishes this case from *United States v. Phifer*, 511 F.2d 960 (4th Cir.1975), in which, after defense counsel complained that defendant's dilatory tactics resulted in his being unprepared for trial, the district court allowed counsel to leave the courtroom and required the defendant to proceed *pro se*. This court reversed, holding that the district court erred in permitting counsel to withdraw. *See also Jackson v. James*, 839 F.2d 1513 (11th Cir.1988). Indeed, defendants appear to concede on appeal that trial counsels' ethical quandary was insoluble.

■ The more difficult question is whether, once having appreciated the substance of counsels' ethical conflict and therefore the propriety of permitting them to withdraw, the district court should have granted a continuance to enable Attar to secure substitute counsel. The determination whether a continuance is justified is left to the sound discretion of the trial court. *Morris v. Slappy*, 461 U.S. 1, 11, 103 S.Ct. 1610, 1616, 75 L.Ed.2d 610 (1983). We have held that a district court need not grant a continuance for purposes of securing new counsel where the request for it plausibly can be viewed as simply a delaying tactic or as otherwise unreasonable. *See, e.g., Gallop*, 838 F.2d at 107–09; *Sampley v. Attorney General of North Carolina*, 786 F.2d 610, 613–16 (4th Cir.1986). Under that basic principle, we are satisfied that a district court might properly find that the belated creation by a defendant of an inextricable ethical predicament for his counsel constitutes a plausible basis for exercising discretion to deny a continuance to secure new counsel after allowing former counsel to withdraw. Such conduct can properly be viewed as a constructive discharge of counsel undertaken for dilatory or unreasonable purposes just as would be the failure, despite fair opportunity, to have se-

cured counsel originally—with the same legal consequences. We are further satisfied that discretion was properly exercised here notwithstanding the complication presented by the fact that the district court's earlier refusal to allow counsel to withdraw effectively deprived the defendants of around five days in which to seek new counsel before sentencing. Although a district court should always consider the extent to which its denial of an earlier motion to withdraw might have unfairly prejudiced the defendant before it proceeds to deny a request for a continuance, the district court here quite properly could view the defendants' ultimate situation as one entirely of Attar's own unreasonable creation.

In sum, given the facts that Attar's about-face occurred just a few short days before sentencing, that sentencing had already been continued once (for nearly six weeks) at the defendants' request, and that the defendants' attempt to withdraw their facially valid guilty pleas faced precious little, if any, prospect of success—we cannot say that the district court abused its discretion in refusing to grant a continuance so that Attar could seek to retain new counsel.[5]

### IV.

For the foregoing reasons, we affirm the district court's sentencing order.

*AFFIRMED.*

---

**5.** Because we have concluded that under the particular circumstances of this case it must be analyzed as one most analogous to those in which defendants seek last-minute continuances to secure counsel despite earlier fair opportunity to do so, rather than as one in which defendants with counsel arguably have waived the right to continued representation, defendants' invocation of *Faretta v. California*, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975), is misplaced.

When a defendant seeks and is denied a last-minute continuance, the issue is not whether he has validly waived his right to counsel by a voluntary, properly informed choice to proceed *pro se, see id.* at 835, 95 S.Ct. at 2541, but the quite different issue whether by a constitutional exercise of judicial discretion, he properly has been deprived of any choice but to proceed *pro se. See, e.g., Sampley*, 786 F.2d at 613–16.