**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

———————

**No. 21-4351**

———————

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

CHRISTOPHER RAYQUAZ SINGLETARY,

Defendant - Appellant.

———————

Appeal from the United States District Court for the Eastern District of North Carolina, at Raleigh.  James C. Dever, III, District Judge.  (5:18-cr-00097-D-1)

———————

Argued:  December 8, 2022                    Decided:  August 1, 2023

———————

Before HARRIS and RICHARDSON, Circuit Judges, and Patricia Tolliver GILES, United States District Judge for the Eastern District of Virginia, sitting by designation.

———————

Affirmed by published opinion.  Judge Harris wrote the opinion, in which Judge Richardson and Judge Giles joined.

———————

**ARGUED:**  Jennifer Claire Leisten, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Raleigh, North Carolina, for Appellant.  David A. Bragdon, OFFICE OF THE UNITED STATES ATTORNEY, Raleigh, North Carolina, for Appellee.  **ON BRIEF:**  G. Alan DuBois, Federal Public Defender, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Raleigh, North Carolina, for Appellant.  Michael F. Easley, Jr., United States Attorney, Joshua L. Rogers, Assistant United States Attorney, for OFFICE OF THE UNITED STATES ATTORNEY, Raleigh, North Carolina, for Appellee.

———————

PAMELA HARRIS, Circuit Judge:

In 2019, Christopher Rayquaz Singletary received a 13-year sentence for Hobbs Act robbery and a related firearm offense. We then vacated Singletary's sentence on procedural grounds and remanded for resentencing. *United States v. Singletary*, 984 F.3d 341 (4th Cir. 2021). At resentencing, the district court increased Singletary's sentence by six months and ran that term consecutively to an intervening state sentence on unrelated charges. Singletary now argues that he was resentenced vindictively as punishment for successfully exercising his right to appeal. But the district court expressly based its increased sentence on objective information post-dating Singletary's initial sentencing – namely, Singletary's new state convictions and his lengthy disciplinary record while incarcerated. Because these developments suffice to rebut any presumption of vindictiveness, we affirm the district court's judgment.

## I.

## A.

We first review the facts of Singletary's initial sentence and appeal to the extent they bear on his claim of judicial vindictiveness at resentencing. On October 5, 2017, Singletary, then 21 years old, used a firearm to rob a restaurant in Raleigh, North Carolina. He was arrested soon after and pleaded guilty to Hobbs Act robbery, 18 U.S.C. § 1951, and using a firearm during a crime of violence, 18 U.S.C. § 924(c). In May 2019, the district court sentenced Singletary to an aggregate 13-year prison term – six years on the robbery count, and a mandatory consecutive seven years on the firearm count – followed by five

years of supervised release. Though the court imposed a sentence within the advisory Sentencing Guidelines range, it expressed concern over numerous state convictions – resulting in a criminal history category of VI – Singletary had amassed at a young age. At sentencing, the court admonished Singletary: "If you get out and continue on this path, this type of behavior, and come back here, the next sentence will take you out to your grave." J.A. 73.

As part of his plea agreement, Singletary waived his right to appeal "the conviction and whatever sentence is imposed on any ground," save a few narrow exceptions not relevant here. J.A. 129. Nonetheless, Singletary appealed, arguing that the district court had included two discretionary conditions of supervised release in its judgment that it failed to pronounce at sentencing. *See United States v. Rogers*, 961 F.3d 291, 300 (4th Cir. 2020) (holding that the district court must orally pronounce all non-mandatory conditions of supervised release at sentencing). The government moved to dismiss Singletary's appeal as within the scope of his appeal waiver.

A panel of this court held that Singletary's pronouncement claim was not barred by his waiver. *United States v. Singletary*, 984 F.3d 341, 344 (4th Cir. 2021). Although Singletary had waived his right to appeal "whatever sentence is imposed," the panel reasoned, the thrust of his pronouncement claim was "that he in fact never was sentenced to the [challenged] conditions in his judgment." *Id.* Because this contention fell "outside the scope of his promise not to appeal the 'sentence' actually 'imposed' upon him," the court proceeded to the merits of Singletary's claim. *Id.* at 345. And on the merits, the panel agreed that the district court had failed to pronounce the challenged conditions.

3

Finally, "given that custodial and supervised release terms are components of one unified sentence," the court concluded that an appropriate remedy was to vacate Singletary's entire sentence and remand for resentencing. *Id.* at 346 & n.4 (cleaned up).

**B.**

Singletary was resentenced on July 6, 2021. Before the hearing, the government filed a revised memorandum highlighting two developments post-dating Singletary's initial sentencing. First, the government pointed to Singletary's significant disciplinary record while incarcerated: Since his sentencing, Singletary had incurred at least 15 infractions, including "three instances of weapons possession, three instances of threatening to harm correctional officers, five instances of disobeying lawful orders, one instance of lock tampering, and one sexual act." J.A. 108.

And second, the government noted that Singletary had since pleaded guilty to three North Carolina state charges arising from an unrelated armed robbery he committed in 2017.[1] The state court sentenced Singletary to a total term of 126 to 173 months' imprisonment – roughly 10.5 to 14.5 years – but it ran this term concurrently with Singletary's since-vacated federal sentence. In the government's view, this concurrent state sentence had "effectively subsume[d]" Singletary's federal term and left him "unpunished for his federal offenses." J.A. 170, 178. The government thus requested that the court run any new sentence consecutively to Singletary's state term. *See* U.S.S.G.

---

[1] These state charges were pending at the time of Singletary's initial sentencing, so they were listed in his Presentence Investigation Report as alleged conduct.

4

§ 5G1.3(d) (giving the district court discretion to run its sentence "concurrently, partially concurrently, or consecutively" to an unrelated state term).  In response, Singletary's counsel argued that a consecutive sentence would "frustrate the clear intent" of the state sentencing court and, by effectively adding over a decade to Singletary's total period of incarceration, "risk . . . making him institutionalized beyond repair."  J.A. 93, 99.

At resentencing, the court expressed that it was "tremendously concerned" by these post-sentencing developments.  J.A. 92.  Citing *Pepper v. United States*, 562 U.S. 476 (2011), the court advised that it would conduct a de novo resentencing, "tak[ing] into account new information, including the new convictions and the multitude of extremely serious infractions."  J.A. 92.  The court stated that it had "learned a lot about" Singletary since its initial sentencing, before recounting Singletary's disciplinary record in detail.  J.A. 107–08.  It then turned to Singletary's state convictions, observing that it "did not have the benefit" at its initial sentencing "of having that insight into who Christopher Singletary really is."  J.A. 109.  And it concluded that this "conduct in the totality bespeaks a tremendous need for society to be protected from Christopher Singletary."  *Id.*

The court then imposed an aggregate federal term of 13.5 years' imprisonment – a six-month increase from its initial 13-year sentence and the top of Singletary's advisory Guidelines range.  And it ordered that this sentence run consecutively to Singletary's state term, "reject[ing] the argument that" a consecutive sentence "would be disrespectful to the [s]tate" court's intent.  J.A. 111; *see id.* ("I absolutely have the discretion to run this consecutively . . . and I will run it consecutively because society needs to be protected from Mr. Singletary for an extremely long time.").  Singletary then filed this timely appeal.

5

## II.

Singletary now argues that the district court increased his sentence vindictively as punishment for his initial appeal.  In *North Carolina v. Pearce*, the Supreme Court recognized that "[d]ue process . . . requires that vindictiveness against a defendant for having successfully attacked his first conviction must play no part in the sentence he receives" on remand.  395 U.S. 711, 725 (1969), *overruled on other grounds by Alabama v. Smith*, 490 U.S. 794 (1989).  Singletary contends that when the district court added six months to his federal sentence and ran that term consecutively to his 10.5- to 14.5-year state term, it "effectively increased his sentence on remand by at least eleven years."  And he claims that this "dramatic" increase gives rise to a presumption of vindictive motives, one the court's stated rationales at resentencing fail to rebut.  *See Smith*, 490 U.S. at 798–99.

We will address the merits of this argument in a moment.  But we begin with a threshold dispute:  Once again, the government contends that Singletary's appeal must be dismissed based on the appeal waiver in his plea agreement.

### A.

We review the scope of a defendant's appeal waiver de novo.  *United States v. Blick*, 408 F.3d 162, 168 (4th Cir. 2005).  As discussed above, Singletary waived his right to

appeal "the conviction and whatever sentence is imposed" on all but very limited grounds.[2]

A panel of this court held that Singletary's initial appeal – in which he argued that the district court's judgment included certain supervised release conditions not pronounced at sentencing – fell "outside the scope of his promise not to appeal the 'sentence' actually 'imposed' upon him." *Singletary*, 984 F.3d at 345. But here, where Singletary directly challenges the sentence he received, his claim appears to fall within the four corners of his waiver.

This observation does not end our inquiry, however. As we have emphasized, "a defendant who executes a general waiver of the right to appeal" does not "subject himself to being sentenced entirely at the whim of the district court.'" *United States v. Attar*, 38 F.3d 727, 732 (4th Cir. 1994) (quoting *United States v. Marin,* 961 F.2d 493, 496 (4th Cir. 1992)). Instead, we recognize a "narrow class of claims that we have allowed a defendant to raise on direct appeal despite a general waiver of appellate rights." *United States v. Lemaster*, 403 F.3d 216, 220 n.2 (4th Cir. 2005); *see United States v. Moran*, 70 F.4th 797, 802 n.3 (4th Cir. 2023) (collecting cases).

Relevant here, we will "decline[] to enforce a valid appeal waiver . . . where the sentencing court violated a fundamental constitutional or statutory right that was firmly established at the time of sentencing," *United States v. Archie*, 771 F.3d 217, 223 (4th Cir.

---

[2] Singletary preserved the right to appeal from "a sentence in excess of the applicable advisory Guideline range" and to raise claims "based upon grounds of ineffective assistance of counsel or prosecutorial misconduct not known to the defendant at the time of the defendant's guilty plea." J.A. 129–30.

2014), or where the court based its sentence "on a constitutionally impermissible factor such as race," *United States v. Marsh*, 944 F.3d 524, 528 (4th Cir. 2019) (internal quotation marks omitted). These exceptions derive from the understanding that "a defendant's agreement to waive appellate review of his sentence is implicitly conditioned on the assumption that the proceedings following entry of the plea will be conducted in accordance with constitutional limitations." *Attar*, 38 F.3d at 732.

We conclude that an allegation of judicial vindictiveness fits squarely within this narrow class of claims. A defendant's fundamental due process right to appeal his sentence without fear of retribution by the sentencing court has been firmly established for half a century. *See Pearce*, 395 U.S. at 725; *cf. United States v. Lundien*, 769 F.2d 981, 987 (4th Cir. 1985) ("[I]t is beyond doubt that a sentence enhanced . . . because of the vindictiveness or other plainly improper motive of the trial court would be fundamentally unfair and would deny the defendant due process."). And much as a defendant cannot "fairly be said to have waived his right to appeal" a sentence based on his race or other protected characteristic, *Attar*, 38 F.3d at 732, we think a defendant's execution of a general appeal waiver is "implicitly conditioned on the assumption" that he will be sentenced free from the trial court's vindictiveness, *id.* To conclude otherwise would permit defendants who waive their appeal rights to be "sentenced entirely at the whim of the district court," *Marin*, 961 F.2d at 496 – precisely the result our precedent rejects. We hold, then, that Singletary's

8

judicial vindictiveness claim falls outside the scope of his waiver and may be raised on

direct appeal.[3]

**B.**

With that settled, we turn to the merits. To refresh, Singletary argues that the district

court failed to justify the "dramatic" increase in his sentence after remand, leading to an

unrebutted presumption of vindictive motives under *North Carolina v. Pearce*, 395 U.S. at

725. We begin with the legal framework governing his claim.[4]

When a defendant's sentence has been vacated on appeal and remanded for

resentencing, the district court may impose "a new sentence, whether greater or less than

---

[3] We note that this question – whether a claim of judicial vindictiveness falls outside the scope of a general appeal waiver – appears to be one of first impression among the federal courts of appeals. But this is not surprising. After all, a vindictive sentencing claim arises only *after* a defendant has successfully appealed his sentence, which will usually mean he did not waive his appeal rights. We think this odd procedural quirk only bolsters our conclusion here: It would make little sense to hold that a defendant has preserved the right to appeal some issue falling outside his waiver, while waiving his constitutional right to be sentenced free from vindictiveness for that appeal.

[4] As an initial matter, the parties dispute the applicable standard of review. Because Singletary did not object on vindictiveness grounds at resentencing, the government argues that we review for plain error. *See United States v. Coston*, 964 F.3d 289, 294 (4th Cir. 2020). Singletary responds that his request for a sentence lower than the one imposed suffices to preserve de novo review of his claim. *See United States v. Lynn*, 592 F.3d 572, 578–79 (4th Cir. 2010) (holding that requesting a lower sentence preserves a claim of procedural reasonableness). Though we have not addressed this question, several other courts of appeals have held that a defendant must "make a contemporaneous objection to his sentence on grounds of vindictiveness to preserve his claim of *Pearce* error." *United States v. Vontsteen*, 950 F.2d 1086, 1090 (5th Cir. 1992) (en banc); *see, e.g.*, *United States v. Johnson*, 715 F.3d 179, 182 (6th Cir. 2013); *United States v. Baugham*, 613 F.3d 291, 294 (D.C. Cir. 2010). But while we see little reason to question this consensus approach, we need not decide the issue here, as we conclude that Singletary's claim fails under any standard of review.

the original sentence, in the light of events subsequent to the first trial that may have thrown new light upon the" defendant. *Pearce*, 395 U.S. at 723; *see Pepper*, 562 U.S. at 492 ("[A] court's duty is always to sentence the defendant as he stands before the court on the day of sentencing." (internal quotation marks omitted)). But in *Pearce*, the Supreme Court made clear that "vindictiveness against a defendant for having successfully attacked his first conviction must play no part in the sentence he receives." *Pearce*, 395 U.S. at 725.

There are two ways a defendant may establish judicial vindictiveness. First, he may "affirmatively prove actual vindictiveness" through direct evidence of animus. *Wasman v. United States*, 468 U.S. 559, 568–69 (1984). But Singletary does not attempt to directly prove such vindictive motives here; as the Supreme Court has recognized, "[t]he existence of a retaliatory motivation would, of course, be extremely difficult to prove in any individual case." *Pearce*, 395 U.S. at 725 n.20. [5]

---

[5] Singletary does note that after we issued our opinion in *Singletary*, we vacated and remanded several other cases to the same district court for resentencing, *see, e.g.*, *United States v. McKinney*, 849 F. App'x 421 (4th Cir. 2021) (per curiam); *United States v. Lewis*, 853 F. App'x 841 (4th Cir. 2021) (per curiam); *United States v. Bonnette*, 856 F. App'x 463 (4th Cir. 2021) (per curiam), and that at one of these resentencings, the court expressed what Singletary characterizes as vexation with these so-called "*Singletary* errors." *See* Resentencing Tr., *United States v. Wilson*, No. 5:19-cr-281 (E.D.N.C. Apr. 26, 2021). The implication seems to be that the court, frustrated with our ruling in *Singletary*, may have punished Singletary as the named defendant in the appeal leading to these remands. We reject any such suggestion. The court's statements at the *Wilson* resentencing – at which, we note, it did *not* increase the defendant's sentence – are not proof of vindictiveness toward Singletary. And indeed, as noted above, Singletary does not bring an actual-vindictiveness claim, instead resting his appeal solely on the court's failure to rebut a presumption of vindictiveness.

So second, "[i]n order to assure the absence of such a motivation," the Court in *Pearce* established a rebuttable presumption of vindictiveness "whenever a judge imposes a more severe sentence upon a defendant" after a successful appeal. *Id.* at 726. To defeat this presumption, the district court must "justify [its] increased sentence by affirmatively identifying relevant conduct or events that occurred subsequent to the original sentencing proceedings." *Wasman*, 468 U.S. at 572; *see Pearce*, 395 U.S. at 726 ("Those reasons must be based upon objective information concerning identifiable conduct on the part of the defendant . . . .").[6]

As the Supreme Court later clarified in *Alabama v. Smith*, the "presumption of vindictiveness does not apply in every case where a convicted defendant receives a higher sentence on retrial." *Smith*, 490 U.S. at 799 (cleaned up). In certain categories of cases, the Court observed, the procedural posture makes it improbable that *any* sentencing authority would have vindictive motives for an increased sentence. *Id.* For example, when a defendant is resentenced by a different court, *Colten v. Kentucky*, 407 U.S. 104 (1972),

---

[6] There is, to be sure, some imprecision in the caselaw about the exact nature of the burden-shifting inquiry under *Pearce*. While some courts describe a district court's affirmative, on-the-record justifications as sufficient to rebut the presumption of vindictiveness, *see, e.g.*, *United States v. Penado-Aparicio*, 969 F.3d 521, 525 (5th Cir. 2020); *United States v. Johnson*, 715 F.3d 179, 182 (6th Cir. 2013), others state that these justifications prevent a presumption of vindictiveness from arising at all, *see, e.g.*, *United States v. Fowler*, 749 F.3d 1010, 1019 (11th Cir. 2014). We think, however, that this divergence is mostly semantic: In either case, by "affirmatively identifying relevant conduct or events that occurred subsequent to the original sentencing proceedings," *Wasman*, 468 U.S. at 572, the sentencing court defeats any presumption that would otherwise arise. And because we conclude that the district court has done so here, we have no need to further parse these differences.

11

or a different jury, *Chaffin v. Stynchcombe*, 412 U.S. 17 (1973), the second decisionmaker has an insufficiently "personal stake in the prior conviction," *Smith*, 490 U.S. at 800 (internal quotations omitted), to make any vindictiveness likely. In these circumstances, because there is no "reasonable likelihood" that a higher sentence on remand resulted from "actual vindictiveness on the part of the sentencing authority," no presumption of vindictiveness attaches. *Id.* at 799. Instead, "the burden remains upon the defendant to prove actual vindictiveness." *Id.*

But when, as here, a defendant is resentenced by the same judge, in the same posture, following a successful appeal, *Smith* leaves no doubt that a presumption of vindictiveness applies to any unexplained increase in his sentence. *See id.* at 802. And in Singletary's view, the district court failed to adequately justify its increased sentence, requiring us to conclude that this sentence was presumptively vindictive. We address this argument next.

## C.

### 1.

To decide Singletary's *Pearce* claim, we must answer two questions. "[W]e first ask whether the new sentence is actually harsher than that imposed prior to successful appeal." *United States v. Kincaid*, 964 F.2d 325, 328 (4th Cir. 1992) (internal quotation marks omitted). If it is, we next ask whether the district court justified its increase by "affirmatively identifying relevant conduct or events that occurred subsequent to the original sentencing proceedings." *Wasman*, 468 U.S. at 572.

12

On the first point, there is no question that Singletary's new sentence is "actually harsher" than his previous term. But the parties hotly contest how *much* harsher it is. In Singletary's view, the six-month increase in his federal sentence combines with his now-consecutive, minimum-10.5-year state term to "effectively" enhance his sentence "by at least eleven years." The government, meanwhile, argues that Singletary's consecutive state term is irrelevant, leaving only a "modest" six-month increase in his federal sentence.

We need not resolve this dispute, because however we describe the extent of Singletary's sentence increase, the district court amply rebutted any presumption of vindictiveness by affirmative reference to objective, post-sentencing events. At the outset of resentencing, the court expressed that it was "tremendously concerned" by the new information it had learned since its initial sentencing. J.A. 92. It advised that it would "take into account new information, including the new convictions and the multitude of extremely serious infractions." *Id.* It described Singletary's intervening disciplinary record at length, concluding that Singletary's remorse at his initial allocution was a "false apology," and that his conduct in prison "showed us who he is." J.A. 97. The court then discussed Singletary's new state convictions, which it said provided further "insight" into Singletary's character, before concluding that this "conduct in the totality bespeaks a tremendous need for society to be protected from Christopher Singletary." J.A. 109. Then, faced for the first time with these state convictions, the court chose a consecutive sentence "because society needs to be protected from Mr. Singletary for an extremely long time." J.A. 111. There is little doubt, then, that the "trial judge here carefully explained his reasons for imposing the greater sentence." *Wasman*, 468 U.S. at 569.

13

2.

Singletary offers two arguments why these detailed, affirmative reasons for the court's increased sentence still fail to rebut a presumption of vindictiveness. Neither is persuasive. First, he observes that the armed robbery underlying his state convictions took place in 2017, almost two years before his original sentencing. And he notes that the district court was made aware of those pending charges when it first sentenced him. Because these convictions were thus based on known conduct occurring before his initial sentencing, Singletary argues that they cannot support a sentence increase.

But as the Supreme Court has held, a sentence increase may be justified by reference to "conduct *or events* that occurred subsequent to the original sentencing proceedings," including new, post-sentencing convictions. *Wasman*, 468 U.S. at 572 (emphasis added). In *Wasman*, the trial court initially declined to consider an unrelated, pending criminal charge against the defendant at sentencing. But when the defendant was convicted of that charge before resentencing, the court cited that conviction as justification for its increased sentence. *Id.* at 569. And the Supreme Court held that "[c]onsideration of a criminal conviction obtained in the interim between an original sentencing and a sentencing after retrial is manifestly legitimate." *Id.* at 569–70. The Court emphasized that there is "no logical support for a distinction between [intervening] 'events' and 'conduct' of the defendant," as long as the new information is probative of the sentencer's "nonvindictive motive." *Id.* at 571–72.

Here, as in *Wasman*, the district court stated that it "did not take into account . . . pending charges" at its initial sentencing. J.A. 106. It then faced the "reality" of

14

Singletary's now-proven conviction and state sentence for the first time on remand. J.A. 111. It also faced, for the first time, the discretionary decision as to whether its sentence should run "concurrently, partially concurrently, or consecutively" to this new state term. U.S.S.G. § 5G1.3(d). A concurrent sentence, as the government argued, would have allowed Singletary's federal term to "subsume[]" his state term, J.A. 170; a consecutive sentence, meanwhile, reflected a judgment that each crime should be punished fully and separately. These novel considerations "manifestly" rebut any presumption of vindictiveness.

Second, Singletary argues that the post-sentencing events on which the court relied simply cannot support the extent of the increase in his sentence. He contends that, though he has admittedly "performed poorly thus far" in prison, his intervening conduct does not warrant an eleven-year increase in his total period of incarceration. But whatever the merits of this claim, it is beside the point here. This argument, rather than addressing the vindictiveness of the district court, goes to the overall reasonableness of Singletary's sentence. Singletary seems to posit that in order to rebut *Pearce*'s presumption, the court's stated reasons for its increase must be roughly proportional to the size of the increase. But even when reviewing a sentence for substantive reasonableness – a claim Singletary concedes is barred by his appeal waiver – we afford far more deference to the judgment of the district court. *See United States v. Spencer*, 848 F.3d 324, 327 (4th Cir. 2017) (describing the "deferential abuse-of-discretion standard" applicable to substantive reasonableness claims).

15

The judicial vindictiveness inquiry, meanwhile, is even more strictly circumscribed. The purpose of the *Pearce* presumption, after all, is not to ensure fair sentences but to prevent defendants from being punished for exercising their right to appeal. *See Texas v. McCullough*, 475 U.S. 134, 138 (1986) ("Beyond doubt, vindictiveness of a sentencing judge is the evil the Court sought to prevent rather than simply enlarged sentences after a new trial."). And because the presumption "operate[s] in the absence of any proof of an improper motive," *Smith*, 490 U.S. at 799 (internal quotation marks omitted), it is not particularly onerous to rebut: The district court's citation to objective, post-sentencing developments in support of its increased sentence will generally satisfy us that vindictiveness played no role. *See Pearce*, 395 U.S. at 726.

As the government forthrightly acknowledged at oral argument, it is possible – though unlikely – that a case could arise in which a district court's stated reasons for an increased sentence are so facially implausible, pretextual, or disproportionate that they cannot rebut the presumption of vindictiveness. But that is not this case. Here, the district court extensively justified its higher sentence by reference to material, legitimately aggravating "conduct [and] events that occurred subsequent to the original sentencing." *Wasman*, 468 U.S. at 572. Under *Pearce* and its progeny, no more is required.

\* \* \*

As Singletary's able counsel reminded us at oral argument, Singletary is unlikely to appreciate these fine distinctions: From his perspective, before his appeal, he faced 13 years in prison for both his state and federal offenses; after vindicating his claim on appeal,

16

he will serve more than an additional decade.[7] And we do not minimize the impact of these developments on Singletary. But the district court provided a careful explanation of its decision to increase Singletary's sentence and run it consecutively to a newly imposed sentence. And it grounded this decision in objective developments post-dating Singletary's initial sentencing. That suffices to dispel any presumption of vindictiveness that otherwise would arise. Accordingly, Singletary's increased sentence presents no constitutional issue, and we affirm.[8]

## III.

For the reasons given above, the judgment of the district court is affirmed.

*AFFIRMED*

---

[7] Singletary's counsel also suggested at oral argument that such a large increase – vindictive or not – might deter other defendants with valid sentencing claims from seeking appellate relief. We appreciate counsel's concern. But the Supreme Court has "intimated no doubt about the constitutional validity of higher sentences in the absence of vindictiveness despite whatever incidental deterrent effect they might have on the right to appeal." *Chaffin v. Stynchcombe*, 412 U.S. 17, 29 (1973). We also note that for defendants bringing similar pronouncement claims under *Singletary*, any such concern might be mitigated: Though we have held that defendants with valid *Singletary* claims are entitled to a full vacatur of their sentences and remand for resentencing, *see Singletary*, 984 F.3d at 346 n.4, we see no reason a defendant could not elect to request a narrower remedy, in the form of a limited remand on only the challenged conditions. *Cf. United States v. McMiller*, 954 F.3d 670, 677 (4th Cir. 2020) (vacating supervised release conditions as procedurally unreasonable and "remand[ing] to the district court for further explanation" on only those conditions).

[8] Singletary also preserved an argument that Hobbs Act robbery, 18 U.S.C. § 1951, is not a crime of violence that may serve as a predicate for his conviction under 18 U.S.C. § 924(c). As Singletary recognizes, this argument remains foreclosed by Fourth Circuit precedent. *See United States v. Green*, 67 F.4th 657, 668–70 (4th Cir. 2023).

17